**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DR. ARASH EMAMI as SHARON V.'s attorney-in-fact,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and UBS FINANCIAL SERVICES INC. GROUP HEALTH AND WELFARE BENEFITS PLAN,<br><br>Defendants. | Case No. 17-9226 (SDW) (LDW)<br><br>**OPINION**<br><br>September 3, 2019 |

**WIGENTON**, District Judge.

Before this Court are Plaintiff Dr. Arash Emami ("Plaintiff" or "Dr. Emami"), Defendant Cigna Health and Life Insurance Company ("Cigna"), and Defendant UBS Financial Services Inc. Group Health and Welfare Benefits Plan's ("Benefits Plan") respective Motions for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. The motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Cigna and Benefits Plan's (collectively, "Defendants") Motions for Summary Judgment are **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff seeks to recover benefits for medical procedures that physicians within University Spine Center performed on Sharon V. ("Patient") in June and August of 2013. At all relevant

times, Patient was an employee of UBS Financial Services, Inc. and had medical insurance through her employer's Benefits Plan. (Pl.'s Statement of Material Facts ("SMF") ¶ 1, ECF No. 51-9; Benefits Plan's SMF ¶ 1, ECF No. 52-2.) Cigna was the third-party claims administrator for the Benefits Plan's medical plan. (Cigna's SMF ¶ 2, ECF No. 53-4; *see also* Benefits Plan SMF ¶ 7.)

A. Benefits Plan's Summary Plan Description ("SPD")

The SPD provides that

> [Cigna] shall have the power and authority in its sole, absolute, and uncontrolled discretion to control and manage the operation and administration of the . . . Benefits Plan (which includes the Medical Plan) and shall have all powers necessary to accomplish these purposes . . . .
>
> [Cigna] shall have discretionary authority to determine whether and to what extent Plan participants . . . are eligible for benefits, and to construe disputed or ambiguous Plan terms. Any decisions made by [Cigna] in accordance with the Plan (including the Medical Plan) shall be final, binding and conclusive. [Cigna] shall be deemed to have properly exercised such authority unless it has abused its discretion hereunder by acting arbitrarily and capriciously.

(Antilety Decl. Ex. A at CIGNA0000560[1], ECF No. 72.)

Should a participant disagree with Cigna's decision regarding a claim, the SPD sets forth the following multi-level appeal and external review process:

> **When you Disagree with a Claim decision**
> As a participant in the . . . Plan, you have the right to appeal . . . Cigna's . . . decisions if you are not satisfied with the outcome of the initial determination . . . .
>
> You will have 180 days following receipt of an adverse benefit decision to appeal the decision to . . . Cigna. . . .
>
> **Pre-service or post-service claims**: If you are dissatisfied with a[n] . . . appeal decision, you may file a second level appeal with . . . Cigna . . . within 60 days of receiving the level-one appeal decision. . . . Cigna will notify you of the decision no more than 15 days (for

---

[1] This Court will refer to Cigna's bates stamped pages when citing to documents that are a part of Cigna's administrative record.

2

pre-service claims) or 30 days (for post-service claims) after the appeal is received.

**External Review Organization (ERO) . . .**
Cigna . . . may deny a claim because it determines that the care is not appropriate or a service or treatment is experimental or investigational in nature. In either of these situations, you may request an external review if you or your provider disagrees with . . . Cigna's decision. An external review is a review by an independent physician, selected by an External Review Organization, who has expertise in the problem or question involved. . . .

You must submit the Request for External Review Form to . . . Cigna . . . within 60 calendar days of the date you received the final claim denial letter. . . .

Cigna . . . , the company and the Medical Plan will abide by the decision of the External Review Organization, except where . . . Cigna can show conflict of interest, bias or fraud.

(*Id.* at CIGNA0000550-51.)

B. <u>Cigna's Medical Coverage Policy</u>

The SPD explains that "[a]lthough a service may be listed as a covered benefit, it will not be covered unless it is medically necessary for the prevention, diagnosis or treatment of your illness or condition." (*Id.* at CIGNA0000525; *see also id.* at CIGNA0000523 ("Medically Necessary or Medical Necessity").) Additionally, Cigna has a Medical Coverage Policy for "Lumbar Fusion for Spinal Instability and Degenerative Disc Conditions, Including Sacroiliac Fusion" ("Policy 0303"). Policy 0303 explains that

> **Cigna covers single level lumbar fusion (e.g., L4-L5) as medically necessary for the treatment of spinal stenosis when there is an associated anterolisthesis, and ALL of the following criteria are met:**
>
> - back pain with neurogenic claudication symptoms or radicular pain
> - failure of at least three (3) consecutive months of physician-supervised conservative medical management including exercise, nonsteroidal and/or steroidal medication (unless

- contraindicated), physical therapy and activity lifestyle modification
- clinically significant functional impairment (e.g., inability to perform household chores or prolonged standing, interference with essential job functions)
- central, lateral recess or foraminal stenosis is demonstrated on imaging studies (e.g., radiographs, magnetic resonance imaging [MRI], computerized tomography [CT], myelography)
- radiographic evidence of **EITHER** of the following:
  - anterolisthesis (anterior translation of the vertebra on the adjacent vertebra below) resulting in a Grade 1 spondylolisthesis or segmental instability (e.g., 4mm displacement anterior translation of the vertebra on the adjacent vertebra below)
  - Grade 2 or higher spondylolisthesis
- the individual is a nonsmoker, or in the absence of progressive neurological compromise will refrain from smoking or tobacco use for at least 6 weeks prior to the planned surgery

(Nowak Cert. Ex. E at CIGNA0000402, ECF No. 51-7; *see also* Cigna SMF ¶ 12.)

C. University Spine Center's Physicians' Claims

On June 24, 2013, Dr. Pamela D'Amato ("Dr. D'Amato") performed a "Left L5-S1 Transforaminal Epidural Steroid Injection under Fluoroscopy" on Patient. (Cigna SMF ¶¶ 18-19.) Dr. D'Amato billed Cigna $4,572.00 for the service and was reimbursed $3,300.00. (*Id.* ¶¶ 20-21.)

Subsequently, on August 13, 2013, Dr. Emami performed surgery on Patient's back. (*Id.* ¶¶ 22-23.) Dr. Emami billed $155,760.00 for his services; Cigna paid $28,477.07 and denied any additional reimbursement due to a lack of medical necessity.[2] (Cigna SMF ¶¶ 26, 28-29; Pl.'s Resp. to Cigna's SMF ¶ 29, ECF No. 66-1.) Dr. Kumar Sinha ("Dr. Sinha"), who assisted Dr.

---

[2] Specifically, two procedure codes (i.e., 22633 and 20930) on Dr. Emami's bill were denied for the following reason: "BASED ON DOCUMENTATION CURRENTLY ON FILE, THESE SERVICES OR SUPPLIES APPEAR NOT TO BE MEDICALLY NECESSARY. YOUR PLAN PROVIDES COVERAGE ONLY FOR MEDICALLY NECESSARY SERVICES AND SUPPLIES." (Antilety Decl. Ex. A at CIGNA0000379.)

4

Emami with the surgery, billed Cigna $147,840.00 for his services; Cigna paid $4,802.00[3] and denied any additional reimbursement based on a lack of medical necessity.[4] (Cigna SMF ¶¶ 27, 30-31.)

On or about February 18, 2014, Dr. Emami submitted a first-level appeal to Cigna for his services. (Cigna SMF ¶¶ 32-33; *see also* Antilety Decl. Ex. A at CIGNA0000171-72.) On or around March 25, 2014, his appeal was denied. (Nowak Cert. Ex. D, ECF No. 51-6.) Cigna explained in its denial letter:

> From the documentation previously received and materials submitted with this appeal, medical necessity has not been established because:
> - the documentation submitted does not confirm that there is radiographic evidence of a grade 1 spondylolisthesis (anterolisthesis) or segmental instability or a grade 2 or higher spondylolisthesis
> - the documentation submitted does not confirm that you are a non-smoker or will be [sic] refrain from use of tobacco products for at least 6 weeks prior to the planned surgery.

(Cigna SMF ¶ 36; *see also* Nowak Cert. Ex. D at 2.)

On or about April 29, 2014, Dr. Emami requested a second-level review of Cigna's medical necessity determination. (Cigna SMF ¶¶ 37-38; *see also* Antilety Decl. Ex. A at CIGNA0000199-200.) On July 14, 2014, IMEDECS, an external review organization, issued an External Review Summary Form and an expert reviewer's report, which upheld Cigna's denial of coverage. (Cigna SMF ¶ 40; *see also* Antilety Decl. Ex. A at CIGNA0000308-12.) According to the expert reviewer:

> There is no spondylolisthesis, scoliosis or documented instability in this patient's lumbar spine. There is no fracture, infection or tumor. There is no objective indication to perform a fusion in this patient

---

[3] According to Cigna, Dr. Sinha was paid $4,614.40, but according to Plaintiff, Dr. Sinha was paid $4,802.00. (*Compare* Cigna SMF ¶ 30 *with* Pl.'s Resp. to Cigna's SMF ¶ 30.) The actual amount reimbursed is immaterial to this Court's analysis.

[4] Cigna used the following language to deny one of the procedure codes on Dr. Sinha's bill (i.e., 22633): "MEDICAL DIRECTOR DECISION TO DENY OR PARTIALLY DENY COVERAGE AS NOT MEDICALLY NECESSARY. AN EXPLANATION WAS SENT IN A SEPARATE LETTER. THE PATIENT IS NOT RESPONSIBLE FOR DENIED CHARGES." (Antilety Decl. Ex. A at CIGNA0000389.)

> with a degenerated disc. The patient, in addition, had pain for two months on presentation (6/20/2013) and subsequently had non-operative treatment for only two months before undergoing the spinal fusion (8/13/2013). Her examination did not indicate the presence of radiculopathy. Her MRI of the lumbar spine did not indicate a lumbar herniated disc, significant spinal stenosis or nerve root impingement. Thus without objective findings to warrant decompression, the laminectomy and discectomy L5-S1 is not medically necessary.

(Cigna SMF ¶ 42; *see also* Antilety Decl. Ex. A at CIGNA0000311.)

D. <u>Civil Suit</u>

On October 25, 2017, University Spine Center brought the instant action against Cigna as the assignee of Patient's benefits. (ECF No. 1.) On October 2, 2018, Dr. Emami, as Patient's attorney-in-fact, filed an Amended Complaint, replaced University Spine Center as the plaintiff, and alleged a single claim against Cigna and Benefits Plan to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). (ECF No. 26.) Following a period of discovery, on February 8, 2019, all three parties moved for summary judgment. (ECF Nos. 51-53.) Defendants opposed Plaintiff's motion on March 18, 2019, and Plaintiff replied on April 8, 2019. (ECF Nos. 64-65, 71.) Plaintiff opposed Defendants' motions on March 18, 2019, and Defendants replied on April 8, 2019. (ECF Nos. 66, 69-70.)

**II. LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a

material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citation omitted). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate

the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## III. DISCUSSION[5]

### A. Exhaustion of Administrative Remedies

Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") authorizes a plan's participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). However, "federal court[s] will generally refuse to consider claims to enforce the terms of a benefit plan if the plaintiff has not first exhausted the remedies available under the plan." *Bennett v. Prudential Ins. Co.*, 192 F. App'x 153, 155 (3d Cir. 2006) (citations omitted). "A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (citing *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990)); *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) ("Unless a 'clear and positive showing' is made that it would be futile for the claimant to pursue her claim through the internal claims process, 'that remedy must be exhausted prior to the institution of litigation.'" (quoting *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000)).

---

[5] As a preliminary concern, this Court notes that according to the SPD, the "provisions of the Plan shall be construed administered and enforced according to applicable federal laws as interpreted and applied by the federal courts located in the State of New York and the laws of the State of New York, without regard to any conflict of law rules." (Antilety Cert. Ex. A at CIGNA0000565.) Notwithstanding this provision, New York and New Jersey's laws do not conflict with respect to the legal issues underlying Plaintiff's cause of action. Therefore, this Court need not conduct a choice of law analysis. *See, e.g.*, *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*, No. 14-7280, 2015 WL 4430488, at *6 n.7 (D.N.J. July, 20, 2015) (declining to conduct a choice-of-law analysis for a case arising under ERISA where the laws of Massachusetts and New Jersey were "similar in language and in outcome").

Here, it is undisputed that the Benefits Plan had a multi-level appeal process for claims that were denied in whole or in part. (*See* Cigna SMF ¶ 13.) However, there is no evidence in the record to demonstrate that Cigna's decisions with respect to Drs. D'Amato or Sinha's bills were ever appealed. Rather, Plaintiff argues that Dr. Sinha's bill should be excused from the exhaustion requirement because appealing would have been futile.[6] (Pl.'s Opp'n Br. 2-3, 10-11, ECF No. 66.)

When determining whether exhaustion should be excused on futility grounds, courts have weighed several factors, such as,

> (1) whether [the] plaintiff diligently pursued administrative relief; (2) whether [the] plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) [the] existence of a fixed policy denying benefits; (4) [the] failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

*Harrow*, 279 F.3d at 250. This Court is not persuaded that it would have been futile to appeal Dr. Sinha's bill for assisting with Patient's surgery simply because Dr. Emami's bill as the primary surgeon was partially denied based on a lack of medical necessity. Although Drs. Sinha and Emami's bills were similar, they were not identical and were reimbursed differently. Ultimately, Plaintiff was aware of the procedure to appeal denied claims and failed to diligently pursue those avenues with respect to Drs. D'Amato or Sinha's bills from the time the claims were first denied in 2013 until the instant suit was filed in 2017. *See D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002) ("Plaintiffs who fail to make known their desire for benefits to a responsible company official are precluded from seeking judicial relief." (citations omitted)). Therefore, Defendants are granted summary judgment as to Drs. D'Amato and Sinha's claims.

---

[6] Plaintiff makes no such futility argument with respect to Dr. D'Amato's bill.

9

B. Medical Necessity Determination

When an ERISA benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts will review a denial of benefits under the deferential, "arbitrary and capricious" standard. *McLeod v. Hartford Life & Acc. Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002)); *see also Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1032 (2018); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008). Under the arbitrary and capricious standard, the administrator's decision may be overturned "only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *McLeod*, 372 F.3d at 623 (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). Because the Benefits Plan gave Cigna discretionary authority to process medical claims and appeals,[7] this Court will review Cigna's denial of Plaintiff's claim under the arbitrary and capricious standard.

At each level of review, Cigna denied procedure codes 22633 and 20930 on Dr. Emami's bill because, the procedures were not medically necessary pursuant to Policy 0303. Contrary to Plaintiff's arguments, Cigna's use of Policy 0303 criteria to determine medical necessity was not arbitrary or capricious. (*See* Pl.'s Moving Br. at 8-12, ECF No. 51-1.) The SPD provides that Cigna, as the third-party administrator, has "discretionary authority to determine whether and to what extent Plan participants . . . are eligible for benefits[.]" (Antilety Decl. Ex. A at CIGNA0000560.) This includes the "power to apply, construe, and interpret all the provisions of

---

[7] (*See* Cigna's SMF ¶ 4; *see also* Antilety Decl. Ex. A at CIGNA000560 ("If a third party administrator or insurer is designated to process claims and appeals, such administrator or insurer will have discretionary authority to apply, construe and interpret the Plan and to grant or deny claims for benefits (including, where applicable, appeals).").)

the Plan," "[t]he power to make factual determinations," and "[s]uch powers as are necessary, appropriate, or desirable to enable it to perform its responsibilities, including the power to establish rules, regulations, and forms[.]" (*Id.*) Thus, under the Plan, it was within Cigna's discretion to develop the coverage policy and use it to "*provide guidance in interpreting certain* **standard** *Cigna HealthCare benefit plans*." (Nowak Cert. Ex. E at CIGNA0000401 (detailing "instructions for use" of the coverage policy)); *see, e.g.*, *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 508 (S.D.N.Y. 2015) (noting that "discretionary language" within a healthcare plan gave the defendant, Oxford Health Plans, "the right to establish guidelines . . . to assist with benefits determinations"); *Stern v. Oxford Health Plans, Inc.*, No. 12-2379, 2013 WL 3762898, at *8-9 (E.D.N.Y. July 17, 2013) (rejecting the argument that Oxford's "Growth Hormone Replacement Therapy Guideline" should be disregarded because it was "not part of the Plan[,]" and instead finding that the benefits plan granted Oxford the discretion to adopt such policies to assist with benefits determinations).[8]

Although Plaintiff asserts that Patient's treatment "substantially complied" with Cigna's medical necessity guidelines, (Pl.'s Moving Br. at 13), Policy 0303 is clear that Cigna would only cover "single level lumbar fusion (e.g., L4-L5) as medically necessary for the treatment of spinal stenosis when there is an associated anterolisthesis, and ALL of the [listed] criteria are met[,]"

---

[8] Plaintiff relies on *Miller v. Am. Airlines, Inc.*, 632 F.3d 837 (3d Cir. 2011), to argue that Policy 0303 is "extrinsic" to the Benefits Plan, and thus Defendants' use of the policy's criteria to determine medical necessity was arbitrary and capricious. (Pl.'s Moving Br. at 8-12.) However, *Miller* is distinguishable from the instant matter. In that case, American Airlines terminated a pilot's long-term disability benefits based on his failure to pursue or obtain FAA medical certification. *Miller*, 632 F.3d at 849-50. Because the ERISA-governed plan "[did] not make eligibility for . . . benefits contingent on a pilot's . . . medical certification with the FAA[,]" the Third Circuit determined that the airline's termination decision was arbitrary and capricious. *Id.* at 843; *see also id.* at 850, 856 n.5. Here, however, it is undisputed that under the Benefits Plan, coverage was contingent on "medical necessity." (Antilety Decl. Ex. A at CIGNA0000523, 525.) Policy 0303 elucidates the "generally accepted standards" and "[c]linically appropriate" services referenced in the SPD, (*id.* at CIGNA0000523), and is not akin to the "extra-Plan requirement" discussed in *Miller*, 632 F.3d at 856 n.5.

11

(Nowak Cert. Ex. E at CIGNA 0000402).[9] In accordance with its policy, Cigna denied Dr. Emami's bill because there was no "radiographic evidence of a grade 1 spondylolisthesis (anterolisthesis) or segmental instability or a grade 2 or higher spondylolisthesis[,]" and there was no confirmation that the Patient was a non-smoker or would "refrain from use of tobacco products for at least 6 weeks prior to the planned surgery." (*See* Nowak Cert. Ex. D at 2.) A board-certified external expert in orthopedics upheld Cigna's denial because there were no objective findings to warrant the procedure. (Antilety Decl. Ex. A at CIGNA0000310-11.) Furthermore, the expert noted that Patient "had non-operative treatment for only two months before undergoing the spinal fusion[.]" (*Id.* at CIGNA0000311.) Other than Dr. Emami's references to spondylolisthesis in his own operative report, (*id.* at CIGNA0000057), there are no objective radiological reports mentioning spondylolisthesis, (*see* Cigna SMF ¶ 17). Furthermore, there is nothing to suggest that Patient met Policy 0303's non-smoking criteria. Cigna was not required to "accord special weight to the opinions of a claimant's physician" and this Court may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *see, e.g.*, *Stern*, 2013 WL 3762898, at *11 ("Oxford was entitled to rely on the opinions of its reviewing physicians, all of whom concluded that this treatment was not medically necessary."). Upon reviewing the record, this Court finds that Cigna's determination was reasonable and based on substantial evidence. *See, e.g.*, *Werbler v. Horizon Blue Cross Blue Shield of N.J.*, No. 05-3528, 2006 WL 3511181, at *1, 3-4 (D.N.J. Dec. 5, 2006) (granting summary judgment to the insurance company where sufficient evidence from medical experts and the patient's prior medical history

---

[9] This Court notes that in Dr. Emami's February 10, 2014 appeal to Cigna, the doctor wrote: "I have personally reviewed the indications that are acceptable by Cigna for spinal fusions. Frankly, this patient has two or three of the indications that are acceptable by Cigna guidelines." (Antilety Decl. Ex. A at CIGNA0000174.) Thus, it appears that Dr. Emami was aware of the coverage criteria for the procedures billed.

supported the insurer's decision to deny benefits). Therefore, Defendants are granted summary judgment as to Dr. Emami's claim.[10]

IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motions for Summary Judgment are **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**. An appropriate Order follows.

                                                        s/ *Susan D. Wigenton*
                                                        **SUSAN D. WIGENTON**
                                                        **UNITED STATES DISTRICT JUDGE**

Orig:        Clerk
cc:          Hon. Leda D. Wettre U.S.M.J.
              Parties

---

[10] Cigna also denied procedure codes 63047 and 69990 on Dr. Emami's bill because the "CODE[S] REPRESENT[] SERVICES INTEGRAL TO THE MORE COMPLEX PRIMARY PROCEDURE SUBMITTED ON THIS CLAIM." (Antilety Decl. Ex. A at CIGNA0000064.) Though Plaintiff argues that Cigna's reasoning was arbitrary and capricious, this Court notes that Plaintiff only appealed Cigna's medical necessity determinations. (Antilety Decl. Ex. A at CIGNA0000171, 199.) Thus, to the extent that those codes were not subsumed into codes that were denied based on a lack of medical necessity, this Court finds that Plaintiff has nevertheless failed to exhaust his administrative remedies for those procedures.